## Green's Dairy, Inc., et al. v. Chilcoat et al.

*Fisher, Ports & May,* for plaintiffs.

*Luria & Still, Raymond R. Smith* and *Bergdoll, Dell'Alba & Moore,* for defendants.

ANDERSON, J., November 9, 1953.—In this action in equity plaintiffs seek to enjoin defendants, and particularly defendant Chilcoat from violating the noncompetitive provisions of a contract of employment entered

into by Chilcoat with Walter C. Howe, trading as Howe's Dairy, which was assigned by Howe to Green's Dairy, Inc., upon the sale of the business by Howe to Green's Dairy, Inc. Defendants have filed preliminary objections to the complaint in the nature of a demurrer and seek judgment.

The gist of defendants' objections is that there is no contract or privity of contract between Green's Dairy, Inc., and defendants, Chilcoat & Frey, inasmuch as Walter C. Howe is no longer doing business as Howe's Dairy but that he has now become identified with and is part owner of the corporate entity known as Green's Dairy, Inc., one of the plaintiffs herein, and further that since the contract involved was one governing personal services, a master and servant relationship, it could not be assigned, there being no provision authorizing assignment in the contract itself.

It must be borne in mind, however, that this action is not an attempt to secure specific performance of Chilcoat's contract to render services to Howe but rather to prevent him from violating the noncompetitive provisions of his own agreement. The contract contains the following provision:

". . . that he will not within a period of one year after the termination of said employment, whether such termination be by discharge or voluntary leaving, directly or indirectly, for himself as employer or for any other person, partnership or company as employee, sell, deliver, take orders, fill orders or solicit orders for any milk, cream, butter, cheese, buttermilk, oleomargarine, dairy orange drink and other allied products, such as are commonly dealt in by the dairy business, within the territory or the route or routes, or within a distance of one (1) mile from the route or routes he is serving at the time of the termination of his employment."

Insofar as these preliminary objections are concerned defendant Chilcoat should certainly be bound by the terms of his agreement which are clear and unequivocal, unless prohibited by law or public policy. In addition, it is clear from plaintiffs' pleadings that Chilcoat himself ratified the assignment of his contract to Green's, for it is therein stated that he continued in the employ of Green's from the date of the sale of Howe's business to Green on December 31, 1952, until February 23, 1953, when he left voluntarily and without notice. The law seems well established on this question.

"In the absence of an express provision against assignments, a contract which does not involve personal skill, trust, or confidence is assignable without the consent of the other party, whereas contracts which do involve those qualities are not assignable; but if the other party to such a contract assents thereto, a valid assignment may be made. Moreover, the assignment of such a contract may be ratified by the other party": 4 Am. Jur., 238 §11. Where one party to a contract has recognized the assignee of the other party as the legal assignee and successor in interest of such other, a court of equity will treat such assignee as the legal assignee: Chicago, Rock Island and Pacific Railway Company v. Denver and Rio Grande Railroad Company, 143 U. S. 596. An assignment of a sales agency contract is ratified by accepting from the assignee reports, in his individual name, of sales made by him: 10 A. L. R. 654.

There is a paucity of case law on this question generally and apparently no case in point in our own State. However, the general rule would be applicable and since the pleadings clearly indicate a ratification by defendant it would be improper to sustain defendants' objections. The general policy of our courts is that

summary judgments should be entered only in clear cases and if there is any doubt as to the right to enter such judgment, it should be resolved against the motion: Rudman v. City of Scranton et al., 114 Pa. Superior Ct. 148. We therefore enter the following order:

And now, to wit, November 9, 1953, it is ordered, adjudged and decreed that defendants' preliminary objections to plaintiffs' complaint are overruled and dismissed with an exception and defendants are allowed 20 days to file an answer on the merits.